IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MAUREEN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-00645-CV-W-ODS |
| ) | |
| SAFECO INSURANCE COMPANY ) | |
| OF ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND (3) DENYING AS MOOT PLAINTIFF'S MOTION TO STAY</u>

Pending are Plaintiff's Motion for Summary Judgment (Doc. #26), Plaintiff's Motion to Stay (Doc. #28), and Defendant's Motion for Summary Judgment (Doc. #35). For the following reasons, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion to Stay is denied as moot.

## I. BACKGROUND[1]

On September 16, 2016, Plaintiff Maureen Johnson was involved in a motor vehicle collision. At the time, Plaintiff was operating a 2005 Ford E150 Econoline Van, which was owned by her employer, TestAmerica Environmental Services, LLC. TestAmerica had automobile insurance coverage on the van through Travelers Insurance Company, which provided $1,000,000 in underinsured motorist ("UIM") coverage. Alma Xiloj, the individual driving the vehicle that collided with the van driven by Plaintiff, was insured by Trader's Insurance Company and her policy had a bodily injury liability limit of $25,000. In addition, Jeffrey Johnson, Plaintiff's husband, had an automobile insurance policy through Defendant Safeco Insurance Company of Illinois. The policy provided coverage for three vehicles: a 2013 Ford F150, a 2005 Ford Focus,

---

[1] Unless otherwise noted, the facts in this section are uncontroverted by the parties.

and a 2015 Ford Explorer. These vehicles were not involved in the September 2016 collision. For each insured vehicle, the policy provided $250,000 for each person in underinsured motorist coverage.

In January 2018, Plaintiff filed a lawsuit in Missouri state court against Xiloj. On May 22, 2018, Plaintiff entered into a covenant not to execute with Xiloj. Prior to agreeing to the covenant not to execute, Plaintiff sought Defendant's consent for her to accept $25,000, the applicable limit of Xiloj's policy. In the communication to Defendant, Plaintiff's counsel, in addition to asking for Defendant's consent, stated "I presume you have no issues with this – since Traveler's is holding the primary policy." Doc. #27-9, at 2.[2] Defendant consented and also specified: "As you mention, you would want to secure Travelers' consent as well as they are handling the UIM claim for [Plaintiff] under their primary policy." *Id.* at 1. In May 2018, a bench trial was held in the lawsuit against Xiloj. The state court entered a judgment in the amount of $5,000,000. As agreed, Trader's paid Plaintiff $25,000.

In June 2018, Plaintiff's counsel sent a letter to Defendant and Travelers demanding $1,000,000 from each company. In July 2018, Travelers tendered its UIM coverage limit of $1,000,000 to Plaintiff. Defendant determined its UIM coverage would apply on an excess basis because Travelers provided primary coverage. According to Defendant, Plaintiff's recovery of UIM insurance could not exceed the highest applicable UIM coverage limit for any applicable policy. Travelers' UIM coverage limit of $1,000,000 was greater than the UIM coverage limit in the policy purchased from Defendant. Therefore, Defendant determined Plaintiff's maximum recovery of UIM insurance was $1,000,000. Because Plaintiff had already been paid $1,000,000, Defendant denied coverage.

In August 2018, Plaintiff filed this matter seeking a determination of Defendant's obligations under the policy. Doc. #1. Both parties now move for summary judgment. Docs. #26, 35. Plaintiff also filed a motion to stay. Doc. #28.

---

[2] All references to page numbers indicate the pagination generated by ECF when a document is filed.

2

## III. SUMMARY JUDGMENT MOTIONS

### A. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Discussion

Interpretation of an insurance policy is a question of law. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999) (citation omitted). In Missouri, insurance policies and insurance provisions for underinsured motorist coverage are governed by the rules of contract.[3] *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1132 (8th Cir. 2014) (citation omitted). *Am. Fam. Mut. Ins. Co. v. Turner*, 824 S.W.2d 19, 21 (Mo. Ct. App. 1991) (citation omitted). "The provisions of an insurance policy are read in context of the policy as a whole," and "[t]he language in a policy is given its ordinary meaning unless another

---

[3] The parties do not dispute Missouri law applies.

meaning is plainly intended." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc. 1998) (citations omitted). If the language is unambiguous, the Court must interpret the policy as written, but if the language is ambiguous, the Court must interpret the policy in favor of the insured. *Daughhetee*, 743 F.3d at 1133 (citations omitted). "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the policy [and] is reasonably open to different constructions." *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.3d 810, 814 (Mo. banc 1997). The presence of a broad provision for coverage coupled with subsequent narrowing language does not create an ambiguity. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 162-63 (Mo. banc 2007).

Plaintiff argues she is entitled to at least $250,000 (or as much as $750,000) in UIM insurance from Defendant pursuant to the policy. She argues Defendant is attempting to claim a coverage setoff based on Travelers' payment, and she also contends the policy is ambiguous and confusing. Doc. #27, at 10-20. Defendant claims it is not seeking a setoff, and the policy unambiguously limits UIM insurance when more than one policy provides UIM coverage.

The Court must turn first to the policy. The policy's "Additional Coverages" section includes UIM. Doc. #1-1, at 38-41. The relevant provisions are as follows:

> **INSURING AGREEMENT**
> A.  We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of **bodily injury**:
>     1. Sustained by that **insured**; and
>     2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.
>
> Any judgment for damages arising out of a suit brought without our written consent is not binding on us.
>
> We will pay under this coverage only if **1.** or **2.** below applies:
> 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
> 2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

a. have been given prompt written notice of such tentative settlement; and

b. advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

* * * *

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for "each person" for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of **bodily Injury** sustained by any one person in any one accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

If more than one vehicle is insured under this policy, or if more than one policy issued to the **insured** applies to the same accident, the limits applicable to Underinsured Motorists Coverage may not be stacked.

B. If Combined Single Limit Underinsured Motorists Coverage applies Paragraph **A**. is replaced by the following:

The limit of liability shown in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages because of **bodily injury** resulting from any one accident. This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

If more than one vehicle is insured under this policy, or if more than one policy issued to the **insured** applies to the same accident, the limits applicable to Underinsured Motorists Coverage may not be stacked.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** – Liability Coverage, Part **B** – Medical Payments Coverage or Part **C** – Uninsured Motorists Coverage of this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

\* \* \* \*

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any underinsurance motorist coverage we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance providing coverage on a primary basis.

3. If the underinsured motorist coverage under this policy is provided:

    a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing underinsured motorist coverage on a primary basis. Our share is the proportion that our underinsured motorist limit of liability bears to the total of all applicable underinsured motorist limits of liability for coverage provided on a primary basis.

    b. On an excess basis, we will pay only our share of the loss that must be paid under underinsured motorists insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability for underinsured motorists coverage bears to the total of all applicable limits of liability for underinsured motorist coverage provided on an excess basis.

Doc. #1-1, at 38-41 (emphasis in original).

To summarize, the UIM insurance provisions from the policy establish, in relevant part, the following:

- Defendant will pay UIM insurance if the liability limits "under any applicable bodily injury" policy have "been exhausted by payment."

- Defendant's "maximum limit of liability" and "the most [it] will pay" for UIM insurance for each person's bodily injury damages (regardless of claims made, vehicles involved in the accident, or vehicles or premiums shown in the policy's

6

- declarations) is set forth in the policy's declarations (here, $250,000).

- Defendant will only pay UIM coverage if, as is the case here, the limits of liability under any applicable bodily injury liability policy have been exhausted by payment or settlement.

- If UIM insurance is available "under one or more policies," the insured's recovery for UIM insurance for damages under all applicable policies "may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."

- UIM insurance provided by Defendant for a vehicle not owned by the insured "shall be excess" over any collectible UIM insurance "providing coverage on a primary basis."

- If UIM coverage is provided by Defendant on either a primary or excess basis, Defendant will pay "only [its] share of the loss" to be paid under the UIM coverage with its share being "the proportion that [Defendant's] limit of liability for [UIM] coverage bears to the total of all applicable limits of liability for [UIM] coverage on an excess basis."

Doc. #1-1, at 38-41.

The policy explicitly and unequivocally declares how UIM coverage applies to Plaintiff's situation and the amount to which she may entitled in UIM benefits. First, because Travelers also provided UIM coverage, Defendant's potential obligation to UIM did not arise until the liability limits of the Travelers' policy was exhausted by payment. Doc. #1-1, at 39. Second, because Plaintiff was driving a vehicle she did not own and Travelers provided UIM coverage on a primary basis, UIM coverage under Defendant's policy is "excess" to the UIM coverage provided by Travelers's policy. *Id.* at 41. Third, Defendant's "maximum limit of liability" and "the most [it] will pay" Plaintiff in UIM benefits for her bodily injury damages, regardless of the circumstances, is $250,000, which is the amount of UIM coverage for which Plaintiff's husband contracted. *Id.* at 9, 11, 40. Fourth, Plaintiff's recovery of UIM benefits for damages under "all such policies" (Travelers' and Defendant's policies) "may equal but not exceed the highest applicable limit for any one vehicle under" any policy. *Id.* at 41. Travelers' UIM coverage limit was $1,000,000, and as such, Plaintiff's recovery under both policies was limited to $1,000,000. Because Plaintiff received $1,000,000 from Travelers, she was paid the "highest applicable limit" and received the total amount of UIM benefits she could receive under the policy issued by Defendant.

7

These provisions do not demonstrate "duplicity, indistinctness or uncertainty in the meaning of the policy," and the policy is not "reasonably open to different constructions." *Gulf Ins. Co.*, 936 S.W.3d at 814. Furthermore, and unlike the cases cited by Plaintiff in support of her summary judgment motion, the policy does not expressly promise UIM coverage in every circumstance and does not guarantee UIM coverage equal to or greater than the UIM coverage limit to which Plaintiff's husband contracted. *See Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. banc 2017) (finding the policy was not ambiguous when it restricted "UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit"). The Court finds the policy is unambiguous.[4]

Plaintiff argues the UIM coverage is illusory in that she would never have UIM coverage through Defendant if any other UIM coverage was available. Doc. #27, at 11. But Plaintiff's argument is not accurate. Applying the policy to slightly modified facts in the case before the Court demonstrates this inaccuracy. For example, if the Travelers' policy provided UIM coverage limited to $50,000 (instead of $1,000,000), no other collective UIM insurance were applicable, and Travelers paid Plaintiff $50,000, Defendant would pay UIM benefits to Plaintiff. However, pursuant to the policy, Plaintiff's recovery would be limited to the "highest applicable limit" provided by either (Travelers' or Defendant's) policy. In this hypothetical, the highest applicable limit for UIM insurance would be $250,000, as set forth in Defendant's policy. Once Travelers paid its UIM liability limits to Plaintiff, Defendant would then be obligated to pay Plaintiff $200,000 in UIM insurance. Thus, Plaintiff would receive the benefit for which her husband contracted – i.e., a total of $250,000 in UIM insurance.

Plaintiff also argues the second paragraph in the "other insurance" provision grants excess coverage. Doc. #27, at 19. Initially, Plaintiff relies on the first sentence of that paragraph, which states, "[a]ny underinsured motorist coverage we provide with

---

[4] Other courts have reached the same conclusion when faced with similar policies. *See Goodwillie v. Farmers Ins. Co.*, No. 07-252-RED, 2007 WL 9718251, at *2-3 (W.D. Mo. Dec. 11. 2007); *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 616-17 (Mo. banc 2017); *Swadley*, 513 S.W.3d at 357-58; *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382-83 (Mo. banc 1991); *Lang v. Nationwide Mut. Ins. Co.*, 970 S.W.2d 828, 831-33 (Mo. Ct. App. 1998).

respect to a vehicle you do not own shall be excess over any collective underinsured motorist insurance providing coverage on a primary basis." Doc. #1-1, at 41. But this Court cannot limit its analysis to one sentence and consider the sentence in a vacuum. *See Columbia Mut. Ins. Co.*, 967 S.W.2d at 77. The next sentence provides: "However, the **maximum limit of our liability shall not exceed the highest limit applicable to any one auto**." Doc. #1-1, at 41 (emphasis added). This statement could not be clearer. The policy limits Plaintiff's UIM coverage to the "highest limit" of UIM coverage available from the applicable insurance policies. Tellingly, Plaintiff provides no argument as to how the statement could be reasonably open to different conclusions.

Moreover, and contrary to Plaintiff's argument, the "other insurance" provision does not "grant excess coverage." Instead, it declares that any UIM insurance Plaintiff may collect from Defendant will be "excess over any collectible" UIM insurance provided by a primary insurer, and the most Plaintiff will receive from Defendant in UIM insurance will not exceed "the highest limit applicable to any one vehicle." Doc. #1-1, at 41. Travelers was the primary insurer, and its UIM coverage was limited to $1,000,000. Defendant's policy was limited to $250,000 in UIM coverage per vehicle; thus, the Travelers policy provided the "highest limit applicable to any one auto." Plaintiff received that amount.

The UIM coverage in Defendant's policy "provides a total amount of protection to be paid to the [insured] if other persons legally responsible for [the insured's] injuries have lesser liability limits than those provided under the [insured's] underinsured motorist coverage." *Rodriguez*, 808 S.W.2d at 382; *see also Goodwillie*, 2007 WL 9718251, at *2. Because Travelers' UIM coverage limit was $1,000,000, and therefore, above the UIM coverage limit in Defendant's policy, Plaintiff is not entitled to any UIM coverage from Defendant. Therefore, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

The Court's decision granting summary judgment in Defendant's favor on the first issue raised in the parties' briefs is dispositive, and thus, it is unnecessary for the Court to consider the other issues raised by the parties. However, there is at least one

concern the Court has regarding Plaintiff's argument that she is entitled to stack[5] the UIM coverage of $250,000 for each of the three vehicles insured by Defendant for a total of $750,000 in UIM benefits.

If and only if the Court were to find intra-policy stacking was permitted by the policy, it is unclear which portion of the policy would entitle Plaintiff to recover an additional $750,000. Instead, the "other insurance" provision, as discussed above, <u>limits</u> Plaintiff's recovery for damages under "all such policies or provisions" providing UIM coverage. Doc. #1-1, at 41. Plaintiff's recovery of UIM benefits under all applicable policies "may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing [UIM] coverage on either a primary or excess basis." *Id.* Travelers' UIM coverage limit was $1,000,000, which, according to the policy issued by Defendant, limits Plaintiff's total recovery of UIM benefits to $1,000,000. So, even if the UIM coverage for the three insured vehicles could be stacked for a total of $750,000, that amount is less than the amount Plaintiff already received. Consequently, how Plaintiff would be entitled to and recover more than $1,000,000 in UIM benefits remains puzzling.

### IV. MOTION TO STAY

Also pending is Plaintiff's motion to stay these proceedings until the Eighth Circuit decides *Strain v. Safeco Insurance Company of Illinois*, No. 18-1587 (8th Cir.). *Strain* involves identical policy language, and the Eighth Circuit will decide whether an insured may stack UIM coverage for three vehicles covered by Defendant's policy. Because the Court grants summary judgment on the first issue and does not consider intra-policy stacking, it is unnecessary to stay this matter pending the Eighth Circuit's decision in *Strain.* Therefore, Plaintiff's motion to stay is denied as moot.

---

[5] "Stacking" refers to "an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Lee v. State Farm Mut. Auto.*, Case No. 10-5083-CV-SW-RED, 2011 WL 5983370, at *1 (W.D. Mo. Nov. 30, 2011) (quoting *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 539 (Mo. Ct. App. 2010)); *see also Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999) (citation omitted).

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment, denies Plaintiff's motion for summary judgment, and denies as moot Plaintiff's motion to stay.

IT IS SO ORDERED.

DATE:  May 28, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT